UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| R.N. DEWBERRY, also known as SITAWA NANTAMBU JAMAA, DANNY TROXELL, GABRIEL REYES, PAUL A. REDD JR., SALVADOR PEREZ, ANTONIO GUILLEN, ARTURO CASTELLANOS, TODD ASHKER, LUIS ESQUIVEL, and ANNE BUTTERFIELD WEILLS,<br><br>            Plaintiff,<br><br>        vs.<br><br>RALPH DIAZ, Acting Secretary, State of California Department of Corrections and Rehabilitations (CDCR); SCOTT KERNAN, Former Secretary, CDCR; and KATHLEEN ALLISON, Acting Secretary of Operations, CDCR,<br><br>            Defendants. | Case No:  C 19-1144 SBA<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>Dkt. 13, 19, 22 |

This action arises from a decision by the California Department of Corrections and Rehabilitation ("CDCR") to impose a lifetime ban against attorney Anne Butterfield Weills ("Weills") from visiting or communicating with inmates housed by the CDCR.  Weills, along with her clients, CDCR inmates R.N. Dewberry, Danny Troxell, Gabriel Reyes, Paula A. Redd Jr., Salvador Perez, Antonio Guillen, Arturo Castellanos, Todd Ashker and Luis Esquivel (collectively "Prisoner Plaintiffs"), bring the instant action under 42 U.S.C. § 1983, alleging that the ban violates their constitutional rights.  As Defendants, the Complaint names Ralph Diaz, Acting Secretary of the CDCR; Scott Kernan, Former Secretary of the CDCR; and Kathleen Allison, Acting Secretary of Operations of the CDCR.

The parties are presently before the Court on Defendants' Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6).  Dkt. 22.  Having read and considered the papers filed in connection with this matter and being full informed, the Court hereby GRANTS the motion with respect to Plaintiffs' first and second claims and DENIES the motion as to the third claim.  The Court, in its discretion, finds this matter suitable for resolution without oral argument.  See Fed. R. Civ. P. 78(b); N.D. Cal. L.R. 7-1(b).

# I.   BACKGROUND

## A.   FACTUAL SUMMARY

### 1.   Weills' Representation of Prisoner Plaintiffs

Prisoner Plaintiffs were class representatives in a class action styled as Todd Ashker, et al., v. Governor of the State of California, et al., Case No. C 09-05796 CW.  That action challenged the CDCR's "policies and practices holding prisoners in solitary confinement since 2011."  Compl. ¶¶ 7, 15, Dkt. 1.  The parties reached a class settlement, which was approved by the Honorable Claudia Wilken on January 26, 2016; final judgment was entered on May 6, 2016.  See Ashker v. State of Cal., No. C 09-05796 CW, Dkt. 488, 522.  Though the case is now closed, Prisoner Plaintiffs, through their various counsel of record, have continued to file numerous motions and other matters relating to the interpretation and enforcement of the settlement.[1]

Plaintiff Weills is an attorney with the law firm of Siegel & Yee ("the Siegel firm"), one of many law firms and attorneys representing Prisoner Plaintiffs in the Ashker action.

---

[1] In support of their motion to dismiss, Defendants request the court take judicial notice of the docket in the Ashker action.  Plaintiffs do not oppose the request, which is granted.  Bennett v. Medtronic, Inc., 285 F.3d 801, 803 n.2 (9th Cir. 2002) (noting that a district court "'may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue'").  In reviewing the Ashker docket, the Court notes Weills is one of three attorneys at the Siegel firm who are counsel of record for the plaintiffs in that case.  In addition to the Siegel firm, Prisoner Plaintiffs continue to be represented by the following law firms and solo attorneys: Weil, Gotshal & Manges; Center for Constitutional Rights; Bremer Law Group PLLC; Legal Services for Prisoners with Children; Law Office of Charles Carbone; Law Office of Matthew Strugar; Jules Lobel; Marilyn McMahon; and Samuel Rand Miller.

According to Weills, she was "among the most active" members of Prisoner Plaintiffs'
legal team in terms of meeting with the class representatives and visiting the prisons where
they were incarcerated.  Id.  In addition to her work in Ashker, Weills claims to have been
an "outspoken, public opponent of CDCR's policies and practices regarding solitary
confinement, including making numerous speeches and giving numerous media interviews
on the issue of solitary confinement," among other things.  Id. ¶ 18.

### 2. The Ban Imposed Against Weills by the CDCR

On March 3, 2017, Connie Gipson of the CDCR advised Weills, in writing, that she
was "'temporarily banned' from all CDCR institutions as well as confidential phone calls
and confidential legal mail" pending the outcome of the CDCR's investigation into
potential violations of California Code of Regulations ("CCR"), Title 15, § 3178(s)(3).  Id.
¶ 19.  That provision authorizes the CDCR to restrict attorney visitation and inmate contact
where the attorney has engaged in conduct that "jeopardizes the life of a person, violates
the security of the facility, constitutes a misdemeanor or felony, or is a recurrence of
previous violations…."  Id. (quoting CCR, Title 15, § 3178(s)(3)).  The restriction ranges
from a one-year bar to a lifetime exclusion.  Id.

Weills, through counsel, responded to Ms. Gibson's letter on March 17, 2017,
alleging that the ban was lacking in "any evidentiary support and seriously impinges upon
the rights of prisoners to have access to their chosen counsel."  Id. ¶ 22. Counsel demanded
that the CDCR rescind the ban pending the outcome of the investigation.  Id.  The
Complaint does not indicate whether Weills received a response to her letter.

On March 28, 2017, Weills' counsel wrote to CDCR counsel Alan Sobel, requesting
that CDCR disclose the basis of its accusations so that Weills "could either resolve the
issue or bring this matter to the attention of court overseeing the Ashker litigation."  Id.
¶ 23.  Mr. Sobel responded on March 31, 2017, stating that the "CDCR is still in the midst
of the investigatory process."  Id. ¶ 24.  He added that the ban applied to all correspondence
between Weills and CDCR prisoners, not just confidential communications, as indicated in
Ms. Gipson's letter of March 3, 2017.  Id.

On April 10, 2017, Defendant Kernan informed Weills that he would not rescind the ban and that Weills was "under investigation for unlawful communications." Id. ¶ 25. He further advised Weills that she would be apprised of the investigation's completion at which point she could appeal. Id. On May 18, 2017, Weills' counsel wrote Mr. Kernan to complain about the delay and CDCR's refusal to provide more information to support the ban. Id. ¶ 26.

On July 5, 2017, Defendant Allison wrote to Weills that the investigation was complete and had concluded that she had "engaged in unlawful communication(s) with CDCR inmate(s) that violated the security of the CDCR facility." Id. ¶ 27. The letter further stated that the "CDCR has determined that the severity of the conduct necessitates a 'lifetime' exclusion to visiting CDCR institutions and 'confidential privileges, including confidential visiting, mail, or telephone privileges, and/or normal visiting privileges afforded an attorney or attorney representative." Id. Finally, Weills was informed that, pursuant to Title 15 § 3179, she may appeal the decision and/or present evidence at a meeting in opposition to the lifetime exclusion. Id.

Weills and her counsel met with Defendant Allison on July 26, 2017. Id. ¶ 30. At that meeting Allison informed Weills the investigation had been referred to an "external law enforcement agency" for review and that the CDCR would not provide any additional information to her until the outside investigation had completed. Id. Defendant Allison did disclose, however, that the bases of the investigation were potential violations of Penal Code § 4570 (communication with an inmate without permission) and § 4576 (providing a cellular telephone to an inmate). Id.

On August 23, 2017, Defendant Allison informed Weills that the CDCR investigation had concluded that she "had numerous and extensive illegal cell phone communications with inmate(s), jeopardizing the security of the CDCR institutions" and that her lifetime ban would be upheld. Id. ¶ 32. Defendant Diaz, Acting Secretary of the CDCR, has maintained the ban. Id. ¶ 35.

**B.   PROCEDURAL HISTORY**

On March 1, 2019, Prisoner Plaintiffs and Weills filed suit in this Court alleging the following three claims for relief: (1) Violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article 1, § 15 of the California Constitution (on behalf of Prisoner Plaintiffs); (2) Violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article 1, § 15 of the California Constitution (on behalf of Weills); and (3) Violation of the First Amendment (on behalf of Weills). As relief, the Complaint seeks damages as well as declaratory and injunctive relief. In response to the Complaint, Defendants have filed a Rule 12(b)(6) motion to dismiss. The motion is fully briefed and is ripe for adjudication.[2]

## II.   <u>LEGAL STANDARD</u>

"Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." <u>Somers v. Apple, Inc.</u>, 729 F.3d 953, 959 (9th Cir. 2013). "Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires not only 'fair notice of the nature of the claim, but also grounds on which the claim rests.'" <u>Zixiang Li v. Kerry</u>, 710 F.3d 995, 998-99 (9th Cir. 2013) (quoting in part <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 556 n.3 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Twombly</u>, 550 U.S. at 570 (2007)). The court is to "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." <u>Outdoor Media Group, Inc. v. City of Beaumont</u>, 506 F.3d 895, 899-900 (9th Cir. 2007). Where a complaint or claim is

---

[2] Prior to filing their motion to dismiss, Defendants filed a request for screening under 28 U.S.C. § 1915A, or alternatively, an extension of time to respond to the Complaint. Dkt. 13. The request for screening is denied as moot and the alternative request for additional time is granted nunc pro tunc. Plaintiffs' administrative motion requesting the Court to order Defendants to answer the Complaint is denied as moot. Dkt. 19.

1  dismissed, leave to amend generally is granted, unless further amendment would be futile.

2  Chaset v. Fleer/Skybox Int'l, 300 F.3d 1083, 1087-88 (9th Cir. 2002).

3  **III.   DISCUSSION**

4       Each of the three claims alleged in the Complaint is brought under 42 U.S.C. § 1983,

5  which provides a cause of action for constitutional violations committed "under color of

6  state law." Jensen v. City of Oxnard, 145 F.3d 1078, 1082 (9th Cir. 1998).  Section 1983 is

7  not itself a source of substantive rights, but a jurisdictional vehicle for vindicating federal

8  rights elsewhere conferred.  See Thornton v. City of St. Helens, 425 F.3d 1158, 1164 (9th

9  Cir. 2008) (citations omitted).  To maintain a claim pursuant to § 1983, a plaintiff must

10  establish: (1) the deprivation of any rights, privileges or immunities secured by the

11  Constitution or federal law, (2) by a person acting under the color of state law.  See West v.

12  Atkins, 487 U.S. 42, 48 (1988).  At issue in each of Plaintiffs' claims is whether the

13  pleadings sufficiently allege a constitutional violation.

14       **A.   RIGHT TO COUNSEL/ACCESS TO THE COURTS (CLAIM 1)**

15       The first claim for relief is brought on behalf of Prisoner Plaintiffs and alleges that,

16  in violation of the Sixth and Fourteenth Amendments to the United States Constitution and

17  Article 1, section 15, of the California Constitution, the ban against Weills has

18  "obstruct[ed] [their] ability to obtain counsel of their choice to obtain access to the courts,

19  to confide in and seek advice from counsel, and to meet with counsel under conditions of

20  complete privacy." Compl. ¶ 41.[3]  This claim presents two distinct issues: the right to

21  counsel in civil cases and a prisoner's right to access the courts.

22       **1.   Right to Counsel**

23       It has long been established that there is no right to counsel in civil cases.  U.S. ex

24  rel. Gardner v. Madden, 352 F.2d 792, 793 (9th Cir. 1965).  Plaintiffs' reliance on the Sixth

25  Amendment to the United States Constitution and Article 1, section 15, of the California

26

27       [3] Although the heading to the first claim for relief indicates that it is being brought
    by all Plaintiffs, it is clear from the actual allegations that the first claim is brought on
28  behalf of Prisoner Plaintiffs.

Constitution is misplaced.  Both provisions guarantee the right to counsel in *criminal* cases only and do not apply to *civil* proceedings.  <u>Turner v. Rogers</u>, 131 S.Ct. 2507, 2516 (2011) ("[T]he Sixth Amendment does not govern civil cases."); <u>Chevalier v. Dubin</u>, 104 Cal. App. 3d 975, 978-979 (1980) ("the right to counsel constitutional provisions refer specifically to criminal prosecutions, and hence do not apply to civil proceedings").  The Court therefore dismisses the first claim for violations of the Sixth Amendment and the California Constitution without leave to amend.

### 2.    Access to the Courts

As a general matter, prisoners have a "fundamental constitutional right of access to the courts." <u>Bounds v. Smith</u>, 430 U.S. 817, 828 (1977).  The right to access is grounded in the First and Fourteenth Amendments, which confer upon prisoners the right to petition the government for the redress of grievances and the right to equal protection, respectively. <u>See</u> <u>Christopher v. Harbury</u>, 536 U.S. 403, 415 n.12 (2002).  There are two types of access claims:  forward-looking claims and backward-looking claims.  An access claim may arise from the frustration or hindrance of "a litigating opportunity yet to be gained" (i.e., a forward-looking access claim) or from the "loss" of a meritorious suit that cannot now be tried (i.e., a backward-looking claim).  <u>Id.</u> at 412-15 (2002).

Here, the Complaint purports to assert a forward-looking claim based on allegations that the ban has denied Prisoner Plaintiffs access to the court insofar as they "have or seek to initiate litigation against the CDCR and/or its employees…."  Compl. ¶ 36.  To state a forward-looking claim, the plaintiff "must identify a nonfrivolous, arguable underlying claim" that the plaintiff has been or will be unable to pursue properly because the defendant's actions have denied the plaintiff meaningful access to the courts.  <u>Christopher</u>, 536 U.S. at 415.  In addition, the plaintiff must establish that he has suffered "actual injury." <u>Lewis v. Casey</u>, 518 U.S. 343, 349, 351-52 (1996).  An "actual injury," a jurisdictional requirement derived from the standing doctrine, means "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." <u>Id.</u> at 348 (citation and internal quotations omitted).

1   Plaintiffs have failed to state a claim for denial of access to the courts.  First, the

2   pleadings fail to identify any non-frivolous, underlying claim that Prisoner Plaintiffs were

3   prevented from pursuing.  The allegation that they "have or seek to initiate litigation against

4   the CDCR and/or its employees," Compl. ¶ 36, is too vague and conclusory to state a claim

5   for denial of access to the court.  See Christopher, 536 U.S. at 417-18 ("[T]he complaint

6   should state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a),

7   just as if it were being independently pursued, and a like plain statement should describe

8   any remedy available under the access claim and presently unique to it.").  Second, no facts

9   are presented showing that Prisoner Plaintiffs suffered any actual injury as a result of the

10  ban against Weill.  See Alvarez v. Hill, 518 F.3d 1152, 1155 n.1 (9th Cir. 2008) ("Failure to

11  show that a 'nonfrivolous legal claim had been frustrated' is fatal to his [access to the

12  courts] claim.").

13  Aside from the above deficiencies, it is clear that the access claim fails as a matter of

14  law.  The CDCR's action does not restrict Prisoner Plaintiffs from taking any legal action

15  against the CDCR or its employees, nor does it preclude them from selecting any particular

16  attorney as their counsel of record.  To the contrary, the ban only applies to Weills, who is

17  one of three attorneys at the Siegel firm representing Prisoner Plaintiffs in the Ashker

18  action.  However, Weills' inability to meet or communicate directly with Prisoner Plaintiffs

19  has no bearing on their court access.

20  Aside from the Siegel firm, Prisoner Plaintiffs continue to be represented by

21  numerous other law firms and attorneys, who, notwithstanding the ban, continue to file

22  motions and other requests on behalf of Prisoner Plaintiffs in the Ashker action.[4]

23  Moreover, the fact that Prisoner Plaintiffs, through the Siegel firm, filed the instant lawsuit

24  against various CDCR employees further belies their claim that they have been denied

25  access to the judicial system.  Parrish v. Solis, No. 11-CV-01438, 2014 WL 1921154, at

26

27  _____

    [4] Indeed, the most recent motion to enforce provisions of the settlement was filed on
28  October 29, 2019, by three attorneys with the Center for Constitutional Rights and an
    attorney with the Bremer Law Group PLLC.  Ashker, Case No. C 09-5796, Dkt. 1215.

*12 (N.D. Cal. May 13, 2014) ("The very fact that a plaintiff has been able to file his complaint and air his grievances in district court suffices to undermine any allegation of actual injury in the form of not being able to 'present a claim to the courts[.]'") (citation omitted, alteration in original).  Tellingly, Plaintiffs do not address these facts in their opposition.  In view of Prisoner Plaintiffs' continued ability to litigate their grievances against the CDCR, they are hard-pressed to proceed on a claim for denial of access to the courts.  The second claim for denial of access to the courts is therefore dismissed without leave to amend.

### B. RIGHT TO SELECT COUNSEL AND DUE PROCESS (SECOND CLAIM)

The second claim for relief is brought by Weills against Defendants, who are alleged to have violated the Sixth and Fourteenth Amendments to the United States Constitution and Article 1, section 15, of the California Constitution.  Compl. ¶ 43.  Though alleged as a single claim, three distinct legal claims and theories are presented—one based on the right to select counsel and the other two premised on the right to substantive and procedural due process.[5]  Each issue will be discussed, in turn.

#### 1. Right to Select Counsel

Weills alleges that the ban obstructs "*her clients' ability* to obtain counsel of their choice to obtain access to the courts, confide in and seek advice from counsel, and to meet with counsel under conditions of complete privacy."  Compl. ¶ 43 (emphasis added).  This allegation is identical to the right to counsel claim brought on behalf of Prisoner Plaintiffs, except that Weills is seeking to assert their rights vicariously.  Compare id. ¶ 43 with id. ¶ 41.  As should be obvious, Weills lacks standing to assert constitutional violations allegedly sustained by her clients.  Valley Forge Christian College v. Americans United for Separation of Church and State, 454 U.S. 464, 472 700 (1982) (recognizing that standing requires that the plaintiff "'personally has suffered some actual or threatened injury'")

_____

[5] Though the second claim does not expressly allege the denial of procedural due process, there are allegations elsewhere in the Complaint wherein Plaintiffs make such a claim.  E.g., Compl. ¶ 34.  In addition, Plaintiffs' opposition includes argument directed to the issue of procedural due process.  Dkt. 28 at 10.

(citation omitted); cf., Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994) ("an inmate cannot bring a denial-of-access claim on behalf of another inmate who is able to bring such a claim in his or her own name").  To the extent that Weills is claiming that she personally has a constitutional right to represent Prisoner Plaintiffs in a civil matter, she cites no constitutional or decisional authority to support that proposition.  The Court therefore dismisses Weills' right to counsel claim without leave to amend.

### 2.    Right to Due Process

Next, Weills contends that the ban violates her right to due process.  "The Fourteenth Amendment prohibits States from 'depriv[ing] any person of life, liberty, or property, without due process of law.'"  Newman v. Sathyavaglswaran, 287 F.3d 786, 789 (9th Cir. 2002) (quoting U.S. Const. amend. XIV, § 1).  The Due Process Clause encompasses two types of protections:  procedural fairness (procedural due process) and substantive rights (substantive due process).  Zinermon v. Burch, 494 U.S. 113, 125-28 (1990).  A procedural due process claim challenges the procedures used in effecting a deprivation, whereas a substantive due process claim challenges the governmental action itself.  See Brittain v. Hansen, 451 F.3d 982, 991 (9th Cir. 2006).  Both types of claims are dependent upon the "plaintiff's showing of a liberty or property interest protected by the Constitution."  Wedges/Ledges of Cal., Inc. v. City of Phoenix, 24 F.3d 56, 62 (9th Cir. 1994).

### a)    Substantive Due Process

The Complaint alleges that the ban interferes with Weills' ability to "practice her profession" and has injured her reputation.  Compl. ¶ 44.  "A person 'has a liberty interest in employment protected by the Due Process Clause' if 'the [defendant's action] effectively precludes future work in the individual's chosen profession.'"  Braswell v. Shoreline Fire Dep't, 622 F.3d 1099, 1102–03 (9th Cir. 2010) (citation omitted).  This is a high standard and requires the plaintiff to demonstrate that the defendant made it "virtually impossible for [the plaintiff] to find new employment in his chosen field."  Id. (alterations in original, citation omitted); e.g., Guzman v. Shewry, 552 F.3d 941, 954 (9th Cir. 2009) (noting that a

1   protectable liberty interest is implicated only where there is "a *complete prohibition* on the

2   right to engage in a calling, and not [a] sort of brief interruption") (citing <u>Conn v. Gabbert</u>,

3   526 U.S. 286, 291-92 (1999)) (emphasis in original).[6]

4        Here, Weills fails to establish that Defendants' conduct implicates a protectable

5   liberty interest held by Weills, as the ban does not preclude her "entry into a particular

6   profession." <u>Guzman</u>, 552 F.3d at 954.  While the restriction impacts Weills'

7   communication and visitation with prisoners housed by the CDCR, it does not revoke her

8   state bar license or otherwise constitute a "complete prohibition" on her general ability to

9   practice law.  <u>Id.</u> at 995-996 (rejecting due process claim where a bar preventing a

10  physician from receiving reimbursements from Medi-Cal did not affect his medical

11  license).  At best, the ban constitutes an "incidental burden" on Weills' practice of law,

12  which is insufficient to make out a substantive due process violation.  <u>See</u> <u>Lowry v.</u>

13  <u>Barnhart</u>, 329 F.3d 1019, 1023 (9th Cir. 2003) (holding that while an administrative law

14  judge's bias against an attorney may result in "a harder time finding clients," such conduct

15  was an "indirect and incidental burden on professional practice … far too removed from a

16  complete prohibition to support a due process claim"); <u>Denney v. Drug Enforcement</u>

17  <u>Admin.</u>, 508 F. Supp. 2d 815, 835 (E.D. Cal. 2007) ("Plaintiff has only alleged that he has

18  had to turn away some patients, not that he has been completely precluded from the practice

19  of medicine.  Thus, it would appear that plaintiff has not identified a liberty interest

20  protected by substantive due process.  The court therefore dismisses plaintiff's due process

21  claim.").

22       Nor can Weills state a claim for denial of substantive due process based on an injury

23  to her reputation.  <u>See</u> Compl. ¶ 44.  The Ninth Circuit has held that defamation or other

24  reputational damage alone is insufficient to sustain a cause of action under 42 U.S.C.

25  § 1983.  <u>Hart v. Parks</u>, 450 F.3d 1059, 1069 (9th Cir. 2006).  Rather, plaintiffs who sue for

26

27       [6] To the extent that the plaintiff demonstrates the existence of a protected liberty
     interest, he or she must further show that the inability to pursue an occupation is caused by
     government actions that were arbitrary and lacking a rational basis.  <u>Engquist v. Oregon</u>
28   <u>Dep't of Agric.</u>, 478 U.S. 985, 997 (9th Cir. 2007).

reputational damage under § 1983 must satisfy the requirements of the "defamation-plus" or "stigma-plus" standard.  Crowe v. Cnty. of San Diego, 608 F.3d 406, 444 (9th Cir. 2010).  "A § 1983 'defamation-plus' claim requires an allegation of injury to a plaintiff's reputation from defamation *accompanied by an allegation of injury to a recognizable property or liberty interest*."  Id. (emphasis added).  Weills cannot satisfy this standard because, as the Court has found above, no recognizable property or liberty interest is implicated by the ban.  See Tutor-Saliba Corp. v. City of Hailey, 452 F.3d 1055, 1061 (9th Cir. 2006) ("To establish a violation of substantive due process, a plaintiff must first show a deprivation of some fundamental right or liberty interest that is deeply rooted in this Nation's history and tradition.") (citation and internal quotation marks omitted).  The Court therefore dismisses Weills' claim for denial of substantive due process without leave to amend.

### b)      *Procedural Due Process*

"A procedural due process claim has two elements: deprivation of a constitutionally protected liberty or property interest and denial of adequate procedural protection."  Krainski v. Nevada ex rel. Bd. of Regents of Nevada Sys. of Higher Educ., 616 F.3d 963, 970 (9th Cir. 2010).  Weills alleges that Defendants failed to provide her with sufficient notice of the details regarding the misconduct that formed the basis of the CDCR's investigation and eventual imposition of a lifetime ban.  However, as discussed above, the ban does not implicate a cognizable liberty interest held by Weills.  For that reason, dismissal is warranted.  See United States v. Guillen-Cervantes, 748 F.3d 870, 875 (9th Cir. 2014) ("her [procedural] due process claim fails, as she can point to no constitutionally protected liberty or property interest of which she has been deprived").

Even if Weills could demonstrate the existence of a liberty or property interest with which the State has interfered, she was not denied adequate procedural protection.  See Krainski, 616 F.3d at 970.  The gist of Weills' claim is that the CDCR failed to provide her notice of the misconduct for which she was being investigated so that she could dispute the accusations.  But the Complaint acknowledges that the CDCR informed Weills on multiple

occasions that she was being investigated for "unlawful communications" with and providing cellular telephones to CDCR inmates.  See, e.g., Compl. ¶¶ 19, 23, 24, 25, 30, 32. Though Weills complains that the CDCR should have provided more specific details or evidence to support its findings of misconduct, she cites no legal authority and presents no legal analysis demonstrating her entitlement to such information.  The Court therefore dismisses Weills' claim for denial of procedural due process without leave to amend.

### C.   RETALIATION

The third claim is brought on behalf of Weills for retaliation in violation of the First Amendment.  Weills asserts that the CDCR imposed the ban in retaliation for her role in the Ashker litigation and criticisms of the prison practices at issue in that case.  Compl. ¶ 46. She further notes that a lifetime ban is "grossly disproportionate to penalties imposed on other attorneys" who engaged in improper communications with prisoners.  Id. ¶¶ 17, 18, 38, 39.

Defendants contends that Weills' retaliation claim should be dismissed based on qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  When presented with a qualified immunity defense, the court considers: (1) whether the facts alleged, taken in the light most favorable to the plaintiff, demonstrate that the defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue was "clearly established."  Saucier v. Katz, 533 U.S. 194, 201 (2001).

#### 1.   Violation of a Constitutional Right

The first step in the Court's qualified immunity analysis considers "whether Plaintiffs plausibly plead a violation of a constitutional right…."  Capp v. Cty. of San Diego, 940 F.3d 1046, 1053 (9th Cir. 2019)  To state a First Amendment retaliation claim, "a plaintiff must show that (1) he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to

engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct." O'Brien v. Welty, 818 F.3d 920, 932 (9th Cir. 2016).[7]  "To ultimately 'prevail on such a claim, a plaintiff must establish a 'causal connection' between the government defendant's 'retaliatory animus' and the plaintiff's 'subsequent injury.'" Capp, 940 F.3d at 1053 (citing Nieves v. Bartlett, 139 S. Ct. 1715, 1722 (2019)).

Defendants argue that Weills has failed to sufficiently allege retaliatory intent; that is, that Weills' protected activity was a substantial or motivating factor in the decision to impose the ban.  This contention is uncompelling.  "At the pleading stage, a plaintiff adequately asserts First Amendment retaliation if the complaint alleges plausible circumstances connecting the defendant's retaliatory intent to the suppressive conduct." Arizona Students' Ass'n v. Arizona Bd. of Regents, 824 F.3d 858, 870 (9th Cir. 2016). Here, the pleadings allege that Weills was an integral part of the Ashker litigation team and an outspoken critic of the CDCR's practices at issue in that case.  Compl. ¶¶ 17, 18.  In addition, the CDCR's imposition of a lifetime ban against Weills is alleged to be more severe than punishment imposed against other attorneys against whom similar accusations have been made.  Id. ¶ 39.  In view of these allegations, it is reasonable to infer, for purposes of evaluating the pleadings, that Weills' active role in the lawsuit against the CDCR as well as her criticisms of the CDCR were substantial or motivating factors in its decision to impose a lifetime ban against her.  See Chaffee v. Chiu, No. 4:11-CV-05118-YGR, 2012 WL 4343824, at *4 (N.D. Cal. Sept. 20, 2012) (finding that "a reasonable inference of retaliation may be drawn based on [plaintiff's] history of involvement and his criticisms of the Board").

Defendants deny any retaliatory animus, claiming that the CDCR merely imposed a permissible sanction in response to its determination that Weills had engaged in improper

---

[7] If a plaintiff establishes each of these elements, "the government can escape liability by showing that it would have taken the same action even in the absence of the protected conduct." Pinard v. Clatskanie School Dist. 6J, 467 F.3d 755, 770 (9th Cir. 2006).

conduct.  Dkt. 22 at 8.  However, the possibility that Defendants may have had legitimate grounds for banning Weills does not ipso facto preclude a claim for retaliation.  "Otherwise lawful government action may nonetheless be unlawful if motivated by retaliation for having engaged in activity protected under the First Amendment."  Arizona Students' Ass'n, 824 F.3d at 869.  While it is possible that the CDCR had legitimate grounds for banning Weills, the ultimate issue of whether her misconduct—or her protected activity— motivated the ban presents a factual issue that is not suitable for resolution on a motion to dismiss.  The Court finds that Plaintiffs have alleged a plausible claim for retaliation under the First Amendment.

### 2.     Clearly Established

Having concluded above that Plaintiffs have stated a plausible claim for retaliation in violation of the First Amendment, the Court next addresses whether the right at issue was "clearly established" at the time of Defendants' alleged misconduct in 2017.  See Pearson, 555 U.S. at 232.  The right at issue is the right to engage in protected activity without being subjected to retaliation by a government official.  That right was clearly established before Defendants imposed the lifetime ban against Weill.  See, e.g., Hartman v. Moore, 547 U.S. 250, 256 (2006) ("the First Amendment prohibits government officials from subjecting an individual to retaliatory actions" for engaging in protected speech).

Defendants do not dispute that the law prohibiting retaliatory conduct in response to engaging in protected conduct violates the First Amendment.  Rather, they argue that it was reasonable for them to ban Weills based on the CDCR's conclusion that she had violated prison regulations and the California Penal Code.  Dkt. 29 at 4.  But, as already discussed, the issue of whether Defendants imposed the ban in response to Weills' violations as opposed to Weills' criticisms of the CDCR cannot be resolved at this early stage of the litigation.  See Arizona Students' Ass'n, 824 F.3d at 869.

In sum, the Court concludes that Weills has sufficiently pleaded a violation of her clearly established First Amendment rights, and that Defendants are therefore not entitled to qualified immunity at this juncture.  This conclusion, however, does not preclude

1   Defendants from later asserting a qualified immunity defense on summary judgment.  <u>See</u>

2   <u>Capp</u>, 940 F.3d at 1059 (noting that a ruling on qualified immunity at the pleading stage

3   may be revisited on summary judgment "[o]nce an evidentiary record has been developed

4   through discovery").

5   **IV.    <u>CONCLUSION</u>**

6         The only viable claim alleged in the Complaint is the third claim for retaliation in

7   violation of the First Amendment brought by Plaintiff Weills.  Accordingly,

8         IT IS HEREBY ORDERED THAT Defendants' motion to dismiss is GRANTED IN

9   PART and DENIED IN PART.  The first and second claims are DISMISSED WITHOUT

10  LEAVE TO AMEND.  Defendants shall file their responsive pleading no later than

11  fourteen (14) days after the date this Order is filed.

12        IT IS SO ORDERED.

13  Dated:  11/20/19

                                    _____
14                                  SAUNDRA BROWN ARMSTRONG
                                    Senior United States District Judge
15

16

17

18

19

20

21

22

23

24

25

26

27

28